# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| DAVID JONES,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP.,<br><br>    Defendant. | Case No.:<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, David Jones, ("Plaintiff"), by and through the undersigned counsel, hereby submits his Complaint and Demand for Jury Trial ("Complaint") against Defendant First Advantage Background Services Corp. ("First Advantage" or "Defendant") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendant transacts business in this District; Defendant purposefully avails itself of the protections of this District; and Defendant regularly directs business at this District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff, David Jones, is a natural person who resides in Hebron, Kentucky, within the confines of Boone County, Kentucky. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, First Advantage, is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). First Advantage is incorporated in Florida, its principal place of business is located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia 30328, and can be served through its registered agent, c/o Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092, USA.

6. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

8. The immediate litigation concerns a particularly egregious violation of the Fair Credit Reporting Act by First Advantage.

9. Tragically, Plaintiff's mother passed away recently, and he has been emotionally distraught as a result. In the days and weeks that followed, one of Plaintiff's closest friends was particularly caring and provided Plaintiff with a substantial amount of emotional support.

10. In or around February 2022, Plaintiff learned of an employment opportunity to work alongside his friend, and Plaintiff applied for a position with non-party Dollar General.

11.     Plaintiff was very excited about the opportunity to work with his friend, and the position with Dollar General paid over $2,000/year more than Plaintiff's then-current employment.

12.     On or about March 2, 2022, Plaintiff was overjoyed to receive an offer for employment with Dollar General. He enthusiastically accepted and began the onboarding process.

13.     As part of his onboarding as a new employee, Plaintiff was required to consent to a background check through First Advantage, which he did on or about March 2, 2022.

14.     On or about March 3, 2022, Plaintiff submitted his two-week notice with his then-current employer. In response, his then-employer terminated his employment the same day.

15.     Plaintiff notified his contact(s) at Dollar General the same day that he could now start work immediately. Upon information and belief, he was told that he could begin when his background check and other onboarding requirements were completed.

16.     Over the coming days, Plaintiff anxiously awaited word from Dollar General that he could start working. He was absolutely devastated when he instead learned there was a problem with his background check.

17.     Specifically, on or about March 10, 2022, Plaintiff received a pre-adverse action notice notifying Plaintiff that an adverse employment decision would be made based on the findings contained in his background check.

18.     The pre-adverse action notice communicated that in order for Dollar General to give further consideration to Plaintiff's application for employment, "First Advantage must receive the dispute request **and the completed reinvestigation must establish that the**

3

**information you dispute is inaccurate or incomplete.**" This document detailed that Dollar General would make its final decision on the sixth day.

19. Plaintiff was utterly shocked. He couldn't think of anything in his history which would bar him from employment with any employer. Furthermore, he had been subject to numerous background checks in the past, all without issue.

20. The pre-adverse action notice included a copy of Plaintiff's background check, as prepared by First Advantage. Plaintiff frantically reviewed it to determine what the problem was.

21. The background check contained a summary page near the top which included four columns: "Package Searches Ordered," "Status," "Review," and "Score."

22. Plaintiff's eyes shot to the rows labeled "First Advantage National Criminal File" and "First Advantage National Criminal File HEBRON, BOONE, KY." Both of these rows had entries under the "Review" column, which read "Yes**." The latter row included an entry under the "Score" column which read "On Hold**."

23. Plaintiff looked below the summary grid, which read "Score Status" and contained a legend detailing what the two asterisks meant: "Further review is required by the client to determine the consumer's eligibility based on background check results. Please refer to the corresponding detailed component report section for additional information."

24. Plaintiff paged down to the section of the background check labeled "First Advantage National Criminal File HEBRON, BOONE, KY" and his shock turned to confusion, outrage, and disgust. First Advantage was reporting that Plaintiff was sex offender.

25. Plaintiff is not, nor has Plaintiff ever been, a sex offender.

26. Quite the contrary, Plaintiff is a loving husband and father of two young children and a survivor of childhood sexual abuse. Seeing this horrific record reported on his background check caused Plaintiff visceral and emotional reactions of fear, frustration, and sadness.

27. Plaintiff, still recovering from losing his mother, had his already shaky emotional state exacerbated by First Advantage's offensive assertion that Plaintiff was a sex offender.

28. Moreover, the "Disposition Date" of the entry in question was March 9, 2022 – only one day prior to the completion of the background check. In other words, First Advantage was reporting Plaintiff had become a registered sex offender just the day before.

29. As a father of small children, Plaintiff has researched sex offender registries in the past, in order to ensure that his family has lived in safe areas. He conducted his own research online and found the sex offender registration record being inaccurately reported in his background check.

30. Plaintiff was disgusted to see that the underlying offense for the sex offender in question was "Carnal knowledge of a juvenile."

31. Even a cursory examination of the record in question made it obvious the registered sex offender was a different person than Plaintiff.

32. Plaintiff's first name is "David." The sex offender's first name is "Davie." Plaintiff has never used the alias "Davie" in any capacity, formally or informally.

33. Plaintiff lives in Hebron, Kentucky. The sex offender's address is in Louisiana, a state in which Plaintiff has never lived, physically been, or even so much as flown over.

34. Plaintiff has two middle names, "William" and "Haggard." The sex offender's middle name is "Lynn."

35. Plaintiff is Caucasian. The sex offender is black.

36. Plaintiff is six feet tall. The sex offender is five feet, seven inches tall.

37. The record does not include a match to any of Plaintiff's other personal identifiers, like whole (or partial) Social Security Number or driver's license number.

38. In fact, the only information the registered sex offender and Plaintiff had in common were **similar** first names, the same last name, and the same date of birth.

39. Plaintiff observed that elsewhere in the background check, First Advantage included two notes on March 3, 2022, which read, "Emailed Client Requesting Additional Information: Delay Possible. [Kindly provide the complete middle name to conduct the search]," and "Emailed Client Requesting Middle Name: Delay Possible."

40. In other words, First Advantage recognized that Plaintiff's name, "David Jones," was so common that it was particularly susceptible to potential false positives.

41. Plaintiff never received any request from First Advantage asking him for his middle name, or clarifying whether he had ever used the alias "Davie."

42. Upon information and belief, First Advantage has reason to believe that procedures which match criminal records (including sex offender registration records) to commonly-named consumers using two personal identifiers – 1) first and last name (considered together as one identifier); and, 2) date of birth – create a heightened risk of false positives, as many commonly-named consumers share the same first and last name, and the same date of birth.

43. In fact, the Consumer Financial Protection Bureau has taken the position that precisely the kind of matching that took place with respect to Plaintiff – matching a record to a commonly-named consumer based on first name, last name, and DOB – constitutes a failure to

6

follow reasonable procedures to assure maximum possible accuracy of the criminal-record information in consumer reports.

44. By any metric, Plaintiff's first and last name – David Jones – would be considered an extremely common name.

45. In this case, however, First Advantage failed to even match Plaintiff's full name, as the inaccurate record contains an entirely different first name, "Davie."

46. First Advantage is aware its services are used to make significant consumer decisions concerning employment.

47. First Advantage is aware that criminal records are often reported inaccurately on consumer reports, particularly with respect to consumers who, like Plaintiff, have common names.

48. Furthermore, First Advantage is aware that the existence of a criminal record on a consumer report can often be the sole reason the employer refuses to hire the potential employee.

49. First Advantage failed to take the necessary steps to verify the accuracy of the background information it reported concerning Plaintiff.

50. The Louisiana State Patrol offers a free public access search through its website, where any user can look up information on sex offenders registered in the state of Louisiana.

51. A search for "Davie Jones" quickly identified the underlying, inaccurate record reported in the First Advantage report.

52. It is clear First Advantage never used this website to verify the accuracy of the information it reported concerning Plaintiff. Had it done so, it would not have reported the information at all.

53. On or about March 10, 2022, shortly after receiving the pre-adverse action notice and background check from First Advantage, Plaintiff called First Advantage to dispute the accuracy of the information it was reporting concerning Plaintiff.

54. Plaintiff felt a substantial degree of urgency. The pre-adverse action notice Plaintiff received made clear that not only was Plaintiff required to dispute the record within six days of receiving the pre-adverse action notice, but the reinvestigation by First Advantage – an action beyond Plaintiff's control – had to be completed in the same time period.

55. On March 10, 2022, Plaintiff called First Advantage back at least two more times. Plaintiff was obviously distraught and wanted to resolve this blatant inaccuracy as soon as possible.

56. While First Advantage reinvestigated Plaintiff's disputes, Plaintiff's mind raced. In addition to the visceral emotional reaction Plaintiff had as a result of being associated with such a heinous crime, Plaintiff was embarrassed, humiliated, and outraged that his new employer might believe he was a sex offender.

57. Moreover, Plaintiff feared Dollar General may not become his new employer at all due to First Advantage's inaccurate reporting.

58. In the coming days, Plaintiff contacted First Advantage several times, and grew increasingly worried about whether First Advantage would correct its inaccurate reporting. He was placated with responses assuring him that his disputes were being handled, but he could not get any explanation as to why or how these records would have been matched to him in the first place.

59. In Plaintiff's own words, "I've never checked my email so frequently in my entire life." Plaintiff found himself completely preoccupied to the point where he could barely focus on anything other than getting a response from First Advantage.

60. Plaintiff unfortunately suffers from anxiety, depression, and post-traumatic stress disorder ("PTSD"). The brazen inaccuracy reported by First Advantage in his background check exacerbated Plaintiff's mental and emotional state. In the days following First Advantage's inaccurate reporting, Plaintiff had difficulty eating and was highly irritable.

61. Moreover, Plaintiff, who already has difficulty sleeping, suffered from exacerbated sleeplessness in the days following First Advantage's inaccurate reporting. He found himself frequently awake in the middle of the night, constantly checking his phone to see if First Advantage had emailed him.

62. Finally, six long days later, on or about March 16, 2022, Plaintiff received a phone call from Dollar General. The company invited him to come to employee orientation on March 18, 2022. Plaintiff was relieved, and assumed that First Advantage had finally corrected its inaccurate reporting.

63. Notably, however, Plaintiff never received any response from First Advantage to his multiple disputes. Rather, upon information and belief, First Advantage reinvestigated Plaintiff's disputes, identified the obvious, glaring mistake it had made, and quietly corrected the report.

64. In other words, First Advantage **always** possessed the ability to determine with certainty whether the record it reported concerning Plaintiff was indeed a match to Plaintiff but chose not to do so.

65. Upon information and belief, the only thing which prevented First Advantage from taking extra steps to verify the accuracy of the record in question was the fact it would take longer to do so, would involve a human component, and would therefore be more costly.

66. Upon information and belief, First Advantage fails to maintain and employ reasonable procedures to assure maximal accuracy of the consumer reports and consumer information it sells to third parties as required by the FCRA because it would be more expensive to independently verify the accuracy of its data, despite having reason to know that such data may be unreliable or inaccurate.

67. Upon information and belief, the circumstances which harmed Plaintiff are representative of First Advantage's standard operating procedures, which require consumers like Plaintiff to "police" their own background checks to ensure accurate information is reported.

68. It is unreasonable for a consumer reporting agency like First Advantage to maintain procedures that require consumers to "police" their own background checks. Such procedures place the burden on consumers to correct inaccurate information contained in their background checks **after** they have already been harmed. First Advantage chooses to employ these procedures rather than simply reporting accurate information in the first place.

69. As a direct result of First Advantage's conduct, Plaintiff's employment opportunity was delayed until First Advantage completed its reinvestigation, causing Plaintiff to miss out on more than a week of pay. This caused Plaintiff unnecessary financial stress and anxiety.

70. As detailed herein, Plaintiff is a survivor of childhood sexual abuse. First Advantage's inaccurate reporting that Plaintiff was a sex offender forced him to relive a trauma from his childhood and resulted in significant emotional distress and mental anguish.

71. As a direct result of First Advantage's conduct, Plaintiff has suffered actual damages, including but not limited to: damage to reputation, stress, anxiety, frustration, fear, sadness, embarrassment, humiliation, sleepless nights, and a substantial amount of wasted time.

## COUNT I
### First Advantage's Violations of 15 U.S.C. § 1681e(b)

72. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

73. The FCRA requires consumer reporting agencies, like First Advantage, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

74. First Advantage violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

75. Upon information and belief, First Advantage has been sued by other consumers in the past who have alleged its dispute procedures were unreasonable and violative of the FCRA.

76. Therefore, First Advantage had actual notice of its deficient procedures.

77. In this case, however, First Advantage received actual notice that its procedures were unreasonable as applied to Plaintiff. As detailed herein, even a cursory review of the record in question, compared with Plaintiff's personal identifiers, makes obvious the record it reported in a consumer report concerning Plaintiff was not a match to Plaintiff.

78. It is wholly unreasonable to maintain procedures that allow records to be reported about consumers based on loose matching algorithms.

79. Specifically, it was wholly unreasonable for First Advantage to report a sex offender registration record as belonging to Plaintiff despite the party in question having a different first name, different middle name, different race, different height, and different address than Plaintiff, and the record existing in a jurisdiction wherein Plaintiff has never set foot.

80. As a result of First Advantage's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

81. First Advantage's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, First Advantage is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

82. Alternatively, First Advantage's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, First Advantage is individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

83. In any event, First Advantage is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

84. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Jones, respectfully requests judgment be entered against Defendant First Advantage, for the following:

    A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

    B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

    C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

E. All pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED,

Date: September 8, 2023

/s/ James Craig

James Craig
Craig Henry, PLC
401 West Main Street, Suite 1900
Louisville, Kentucky 40202
P: (502) 614-5962
E: jcraig@craighenrylaw.com
*Attorney for Plaintiff David Jones*